# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL VIGORITO, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>HEALTH INSURANCE INNOVATIONS, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER,<br><br>　　　　　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Vigorito ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Health Insurance Innovations, Inc. ("Health Insurance Innovations" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Health Insurance Innovations securities between August 2, 2017 and September 11, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Health Insurance Innovations operates as a developer, distributor, and administrator of cloud-based individual health and family insurance plans, and supplemental products in the United States. The Company offers, *inter alia*, short-term medical plans, hospital indemnity plans, and supplemental insurance products. It designs and structures individual health and family insurance plans, and supplemental products on behalf of insurance carriers and discount benefit providers and market them to individuals through a network of distributors.

3. Health Insurance Innovations was founded in 2008 and is headquartered in Tampa, Florida. The Company's securities trade on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "HIIQ".

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Health Insurance Innovations' application for a key insurance license in its home state of Florida was rejected due to the state's Office of Insurance Regulation's ("OIR") discovery of undisclosed legal actions against Health Insurance Innovations insiders; (ii) Health Insurance Innovations warned the OIR of the anticipated "domino effect" that the rejection was likely to cause, by which the

Company would subsequently lose licenses in additional states; and (iii) as a result of the foregoing, Health Insurance Innovations' public statements were materially false and misleading at all relevant times.

5. On September 11, 2017, the website *SeekingAlpha.com* published an article reporting on the OIR's June 2017 rejection of Health Insurance Innovations' application for a "key insurance license in [its] home state of Florida as [the OIR] uncovers undisclosed legal actions against HIIQ insiders" and that "HIIQ privately warns of disastrous "domino effect" spreading to other states, causing additional loss of licenses. **HIIQ makes no disclosure to investors.**" (Emphasis added.)

6. On this news, Health Insurance Innovations' share price fell $6.55, or 21.91%, to close at $23.35 on September 11, 2017.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b). Defendant Health Insurance Innovations' securities trade on the NASDAQ, located within this Judicial District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired Health Insurance Innovations securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Health Insurance Innovations is incorporated in Delaware, and the Company's principal executive offices are located at 15438 North Florida Avenue, Suite 201, Tampa, Florida 33613, United States. Health Insurance Innovations' common stock trades on the NASDAQ under the ticker symbol "HIIQ."

14. Defendant Gavin D. Southwell ("Southwell") has served at all relevant times as the Company's Chief Executive Officer.

15. Defendant Michael D. Hershberger ("Hershberger") has served at all relevant times as the Company's Chief Financial Officer.

16. The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Health Insurance Innovations, Inc. operates as a developer, distributor, and administrator of cloud-based individual health and family insurance plans, and supplemental products in the United States. The Company offers, *inter alia*, short-term medical plans, hospital

indemnity plans, and supplemental insurance products. It designs and structures individual health and family insurance plans, and supplemental products on behalf of insurance carriers and discount benefit providers and market them to individuals through a network of distributors.

**Materially False and Misleading Statements Issued During the Class Period**

18. The Class Period begins on August 2, 2017, when Health Insurance Innovations issued a press release and filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 8-K"). For the quarter, Health Insurance Innovations reported net income of $4.38 million, or $0.35 per diluted share, on revenue of $61.78 million, compared to net income of $1.86 million, or $0.24 per diluted share, on revenue of $44.49 million for the same period in the prior year.

19. In the Q2 2017 8-K, Health Insurance Innovations stated, in part:

**Revised 2017 Full Year Guidance**

We are revising our guidance upwards for the full year 2017. We expect Revenue to grow 22% to 25% year-over-year ($225 million to $230 million), Adjusted EBITDA to grow 41% to 51% year-over-year ($39 million to $42 million) and Adjusted EPS to grow 29% to 38% ($1.45 to $1.55). Previously we guided to Revenue of $212 million to $222 million, Adjusted EBITDA of $36 million to $39 million and Adjusted EPS of $1.40 to $1.50.

"In our record second quarter results, we continue to drive top line growth and bottom line results with disciplined execution of our strategy. In the second half of 2017, we will continue to focus on our product and technology innovation to meet consumers' affordable health care needs" said Gavin Southwell, HIIQ's Chief Executive Officer and President.

20. On August 4, 2017, Health Insurance Innovations filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Q2 2017 8-K and reporting in full the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q").

21. In the Q2 2017 10-Q, the Company stated, in relevant part:

**TPA Licensure**

Many states have statutes that require the licensure of third-party insurance administrators ("TPA"). The statutes and applicable regulations vary from state-to-state with respect to the nature of the business activities that may require licensure. Where the Company believes that statutes are unclear or open to interpretation, it takes the prudent approach of applying for a TPA license. Therefore, the Company applied for a TPA license with the Florida Office of Insurance Regulation ("OIR"). In June 2017, the OIR denied the Company's application based on its determination that the Company had not yet provided all information required to process the application. In June 2017, the Company appealed the denial with the Florida Division of Administrative Hearings. A final hearing on the matters has been scheduled for October 17-20, 2017, but the Company is working with the OIR to reach a mutually agreeable resolution of the matter prior to the hearing, including discussing whether the OIR will require the Company to hold such a license at all.

22. The Q2 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23. The statements referenced in ¶¶ 18-22 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Health Insurance Innovations' application for a key insurance license in its home state of Florida was rejected due to the Florida OIR's discovery of undisclosed legal actions against Health Insurance Innovations insiders; (ii) Health Insurance Innovations warned the OIR of the anticipated "domino effect" that the rejection was likely to cause, by which the Company would subsequently lose licenses in additional states; and (iii) as a result of the foregoing, Health Insurance Innovations' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

24. On September 11, 2017, the website *SeekingAlpha.com* published an article, entitled "Health Insurance Innovations: Penalties To Exceed $100 Million And Undisclosed 'Domino Effect'", reporting on the Florida OIR's June 2017 rejection of Health Insurance Innovations' application for an insurance license. The article stated, in part:

Summary

- New data points: Fraud penalties expected to reach $100 million or more. Other insurers required to cease doing business with HIIQ as part of their fraud settlements.

- June 2017: ***HIIQ rejected for key insurance license in home state of Florida as regulator uncovers undisclosed legal actions against HIIQ insiders.***

- HIIQ privately warns of disastrous "domino effect" spreading to other states, causing additional loss of licenses. ***HIIQ makes no disclosure to investors.***

(Emphases added.)

25. On this news, Health Insurance Innovations' share price fell $6.55, or 21.91%, to close at $23.35 on September 11, 2017.

26. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Health Insurance Innovations securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

7

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Health Insurance Innovations securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Health Insurance Innovations or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Health Insurance Innovations;

- whether the Individual Defendants caused Health Insurance Innovations to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Health Insurance Innovations securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Health Insurance Innovations securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Health Insurance Innovations securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

34. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Health Insurance Innovations securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Health Insurance Innovations securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

39. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Health Insurance Innovations securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Health Insurance Innovations' finances and business prospects.

40. By virtue of their positions at Health Insurance Innovations, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

41. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Health Insurance Innovations securities from their personal portfolios.

42. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers

and/or directors of Health Insurance Innovations, the Individual Defendants had knowledge of the details of Health Insurance Innovations' internal affairs.

43. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Health Insurance Innovations. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Health Insurance Innovations businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Health Insurance Innovations securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Health Insurance Innovations' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Health Insurance Innovations securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

44. During the Class Period, Health Insurance Innovations securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Health Insurance Innovations securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise

acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Health Insurance Innovations securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Health Insurance Innovations securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

45. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of Health Insurance Innovations, and conducted and participated, directly and indirectly, in the conduct of Health Insurance Innovations' business affairs.  Because of their senior positions, they knew the adverse non-public information about Health Insurance Innovations' misstatement of income and expenses and false financial statements.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Health Insurance Innovations' financial condition and results of operations, and to correct promptly any public statements issued by Health Insurance Innovations which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Health Insurance Innovations disseminated in the marketplace during the Class Period concerning Health Insurance Innovations results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Health Insurance Innovations to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Health Insurance Innovations within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Health Insurance Innovations securities.

51. Each of the Individual Defendants, therefore, acted as a controlling person of Health Insurance Innovations. By reason of their senior management positions and/or being directors of Health Insurance Innovations, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Health Insurance Innovations to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Health Insurance Innovations and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Health Insurance Innovations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 13, 2017                                  Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

              Facsimile: (312) 377-1184
              Email: pdahlstrom@pomlaw.com

              ***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _Michael Vigorito_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Health Insurance Innovations Inc. ("Health Insurance Innovations" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Health Insurance Innovations securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Health Insurance Innovations securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Health Insurance Innovations securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed  9/11/17
(Date)

_____
(Signature)

Michael Vigorito
(Type or Print Name)

**HEALTH INSURANCE INNOVATIONS (HIIQ)**  **Vigorito, Michael**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 8/25/2017 | Purchase | 32 | $34.7000 |